UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DIESA PARIS,                          :
                                      :
            Plaintiff,                :
                                      :
      v.                              : Civil Action 11-2163 (GK)
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of Social Security,      :
                                      :
            Defendant.                :
_____

**MEMORANDUM OPINION**

Plaintiff, Diesa Paris, brings this action seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), denying her claims for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 42 et seq.

This matter is before the Court on Plaintiff's Motion for Judgment of Reversal [Dkt. No. 8] and Defendant's Motion for Judgment of Affirmance [Dkt. No. 10]. Upon consideration of the parties' cross-motions, the administrative record, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Judgment of Reversal is hereby **granted in part and denied in part**, and Defendant's Motion for Judgment of Affirmance is hereby **denied.**

**I.     BACKGROUND**

Plaintiff is a fifty-year-old woman who resides in Washington, DC. Administrative Record ("AR") at 37, 102-105 [Dkt. No. 3]. She has a high-school education and no specialized training. AR at 38, 136. Plaintiff last worked full time on January 31, 2007 as a retail manager. See AR at 102, 132. She has been diagnosed with systemic lupus erythematosus, psoriatic arthritis, and major depressive order. AR at 15.

As a result of these disorders, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act on February 25, 2008. Plaintiff's claim was denied initially and upon reconsideration. On April 1, 2010, a hearing regarding Plaintiff's alleged disability was held in front of an Administrative Law Judge ("ALJ"). On June 11, 2010, the ALJ denied Plaintiff's request. Thereafter, Plaintiff requested the Appeals Council to review the decision of the ALJ. On October 3, 2011, the Appeals Council affirmed the decision of the ALJ.

   **A.     Disability Determination Process**

In order to qualify for disability insurance benefits, an individual must prove that she has a disability that renders her unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" for a period of "not less than 12 months." 42 U.S.C. §§ 423(a)(1) &

(d)(1)(A). The claimant must support her claim of impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. § 423(d)(5)(A). In addition, the impairment must be severe enough to prevent the claimant from doing her previous work and work commensurate with her age, education, and work experience that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step evaluation process to determine whether a claimant is disabled, thus qualifying for benefits. 20 C.F.R. § 404.1520(a)(1). A clear determination of disability or non-disability at any step is definitive, and the process ends at that step. 20 C.F.R. § 404.1520(a)(4). In the first step, a claimant is disqualified if she is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). In the second step, a claimant is disqualified if she does not have a "severe medically determinable physical or mental impairment" that is proven "by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 & 404.1520(a)(4)(ii). In the third step, a claimant qualifies for benefits if her impairment(s) meets or equals an impairment listed in 20 C.F.R. § 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Between the third and fourth step, the SSA uses the entire

record to make a determination of the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [the] limitations" created by the impairment. 20 C.F.R. §§ 404.1520(a)(4) & 404.1545(a)(1). In the fourth step, a claimant is disqualified if her RFC shows that she is still able to do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In the fifth step, a claimant is disqualified if her RFC shows that she is capable of adapting to "other work that exists in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v) & 404.1545(a)(5)(ii). If the claim survives these five steps, then the claimant is determined disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(v).

**B.   The ALJ's Ruling**

The ALJ applied the sequential five-step process described, supra, and determined that, while Plaintiff suffered from severe impairments including depression, psoriatic arthritis, and systemic lupus erythematosus, she was not disabled within the meaning of the Social Security Act. The issues in dispute in this case arise in steps four and five of the assessment process.

At step four of the assessment, the ALJ determined that Plaintiff had the RFC to perform a range of sedentary work so

long as she had a "sit/stand option"[1] and was limited to unskilled tasks involving no more than occasional contact with the public. AR at 24. At step five of the evaluation process, the ALJ relied on a vocational expert's testimony to determine that Plaintiff "is capable of making a successful adjustment to [] work that exists in significant numbers in the national economy." Id. at 26.

## II.  STANDARD OF REVIEW

A district court is limited in its review of the SSA's findings to determining whether those findings are based on substantial evidence. 42 U.S.C. § 405(g); Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004); Poulin v. Bowen, 817 F.2d 865, 870 (D.C. Cir. 1987). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted), requiring "more than a scintilla, but ... something less than a preponderance of the evidence." Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

A court must "carefully scrutinize the entire record" but may not reweigh the evidence or supplant the SSA's judgment of

---

[1] The ALJ specified that "[t]he claimant needs a sit/stand option; that is, she should not be required to stand for more than 20/30 minutes before being permitted to sit, or be required to sit for more than 20/30 minutes before being permitted to stand." AR at 24.

the weight of the evidence with its own. It must only review whether the ALJ's findings are based on substantial evidence and whether the ALJ correctly applied the law. Butler, 353 F.3d at 999; Davis v. Shalala, 862 F.Supp. 1, 4 (D.D.C. 1994); Davis v. Heckler, 566 F.Supp. 1193, 1195 (D.D.C. 1983). Finally, substantial deference should be given to the ALJ's decision, but the evidence should be read in the light most favorable to the claimant. See Davis, 862 F.Supp. at 4; see also Simms v. Sullivan, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (reviewing court must determine whether the Commissioner, acting through the ALJ, "has analyzed all evidence and has sufficiently explained the weight he [or she] has given to obviously probative exhibits....").

## III. ANALYSIS

### A. The ALJ's Evaluation of Dr. Lumpkins' Opinion

The administrative record contains progress notes and opinions from Tanya Lumpkins, M.D., a rheumatologist and one of Plaintiff's treating physicians.

Plaintiff argues that the ALJ did not properly evaluate Dr. Lumpkins' opinions because he: (1) failed to consider whether her opinion was entitled to controlling weight; (2) did not discuss the proper factors for the evaluation of medical opinions; and (3) did not evaluate many of the limitations noted in her January 18, 2008 opinion. Pl.'s Mot. at 6-8. Defendant

responds that: (1) the ALJ accurately discussed when a treating physician's opinion should be afforded controlling weight; (2) the ALJ properly considered relevant regulatory factors when weighing Dr. Lumpkins' opinion; and (3) to the extent the ALJ failed to properly evaluate any portion of Dr. Lumpkins' opinion, such error does not warrant remand. Def.'s Mot. at 15, 18-19.

The case law in this Circuit is clear that an ALJ must accord substantial weight to the reports and opinions of a claimant's treating physician. Butler, 353 F.3d at 1003 ("Because a claimant's treating physicians have great familiarity with [her] condition, their reports must be accorded substantial weight.") (internal citation omitted) (internal quotation omitted). A treating physician's report is "binding on the fact-finder unless contradicted by substantial evidence." Id. (internal citation omitted) (internal quotation omitted).

Defendant is correct that the ALJ properly accorded Dr. Lumpkins' opinion significant weight. After discussing the regulatory instructions for weighing medical opinions, including when a treating physician's opinion is entitled to controlling weight (AR at 19), the ALJ discussed Dr. Lumpkins' medical opinion and, consistent with the law of this Circuit, accorded it "significant weight." AR at 20; see Payne v. Shalala, Civ. A. No. 93-0288, 1993 WL 405757 at *3 (D.D.C Sept. 24, 1993) ("The

ALJ was obligated to give significant weight to the opinion of [] Plaintiff's treating physician [] so long that opinion was supported by acceptable laboratory and clinical diagnostic techniques and was not contradicted by substantial evidence in the record.").

Defendant is also correct that, contrary to Plaintiff's argument, the ALJ was not required to discuss each of the relevant regulatory factors when deciding what weight to give Dr. Lumpkins' opinion. The regulation at issue states that a ALJ will "<u>consider</u> all of the following factors in deciding the weight [to] give to any medical opinion." 20 C.F.R. § 404.1527(d) (emphasis added). Notably, the regulation requires the ALJ to "consider" certain factors, but does not require the ALJ to recite and discuss each of the factors in the written decision. Plaintiff points to no authority saying that the ALJ must do so.

However, Plaintiff is correct that the ALJ failed to properly evaluate certain relevant portions of Dr. Lumpkins January 18, 2008 opinion. For instance, the ALJ did not discuss, at any point in the five-step evaluation process, Dr. Lumpkins' opinion that Plaintiff could not bend, twist or kneel and could only occasionally move her neck, reach at shoulder level, stand, walk, and perform repetitive movements. AR at 211. The ALJ was required to explain why he paid no attention to Dr. Lumpkins'

opinion on these issues. Butler, 353 F.3d at 1003 ("We [] require an ALJ who rejects the opinion of a treating physician [to] explain his [or her] reasons for doing so." (internal citation omitted) (internal quotation omitted).

Accordingly, upon remand, the ALJ must explain the weight he attaches to Dr. Lumpkins' opinion, and if he disregards any of her conclusions, he must explain his reasons for doing so.

**B.   The ALJ's Assessment of Plaintiff's RFC**

At step four of the disability determination process, the Commissioner is required to show that a claimant's RFC allows her to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f)(1). Assessing RFC is based upon all relevant evidence, which may include the claimant's ability to meet physical or mental demands of work and observations of limitations by family and friends. 20 C.F.R. § 416.945.

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not evaluate medical opinions that conflicted with his RFC assessment. Pl.'s Mot. at 11. Plaintiff further argues that the ALJ was required "to perform a **more detailed** assessment of the Plaintiff's capacity to perform the mental demands of work." Id. at 14 (emphasis in the original). Defendant responds that, to the extent the ALJ failed to evaluate certain medical opinions, such error does not warrant reversal or remand. Def.'s Mot. at

18-19. Defendant further argues that "the ALJ correctly evaluated Plaintiff's mental functioning as the regulations at 20 C.F.R. § 404.1520a direct. That is, [the ALJ] made findings in the four broad areas of mental functioning that were supported by substantial evidence, and he cited to that evidence." Def.'s Mot. at 16.

An ALJ's decision is statutorily required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A)(1988). "When the ALJ arrives at a conclusion regarding [ ] functions that contradicts some part of the evidence on the record, the ALJ must explain his [or her] rationale, for '[t]he judiciary can scarcely perform its assigned review function ... without some indication ... [as to] whether [the] evidence was rejected rather than simply ignored.'" Ross v. Astrue, 636 F. Supp. 2d 127, 133 (D.C. Cir. 2009) (citing Brown v. Bowen, 794 F.2d 703, 708 (D.C. Cir. 1986)). "The ALJ has a duty to explain why [she] either ignored or rejected contradictory evidence." Thomas v. Astrue, 677 F. Supp. 2d 300, 309 (D.D.C. 2010) (citing See v. Wash. Metro. Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994) ("[W]hen faced with evidence in the record contradicting his [or her] conclusion, an ALJ must affirmatively reject that contradictory

evidence and explain his rationale for doing so.") (emphasis added)).

Plaintiff is correct that the ALJ failed to properly evaluate evidence that contradicted his RFC assessment. For instance, the ALJ acknowledged Dr. Cott's finding that Plaintiff had experienced one or two episodes of decompensation, each of extended duration. AR at 19. The ALJ also acknowledged that Dr. Cott's assessment was affirmed by Dr. Nachbahr. Id. However, at step four of the disability determination process, the ALJ concluded, without explanation, that "[t]he record does not disclose any episodes of decompensation of extended duration," id. at 23, which was directly contrary to the opinions of Dr. Cott and Dr. Nachbahr. The ALJ's conclusory determination, with no explanation as to why he rejected or ignored their opinions is insufficient.

Similarly, the ALJ failed to explain why he chose not to consider those portions of Dr. Garmoe's report that contradicted the his RFC assessment. More specifically, Dr. Garmoe found that Plaintiff was severely depressed, discouraged and withdrawn, and that persons with profiles such as Plaintiff's usually had marked distress and severe impairment in functioning. AR at 441. However, the ALJ did not reference this part of Dr. Garmoe's report in his RFC assessment, let alone affirmatively reject it and explain his rationale for doing so.

In sum, the ALJ failed to properly evaluate evidence that contradicted his RFC assessment. Therefore, upon remand, the ALJ must reconsider the medical testimony in its entirety, and provide an explanation for rejecting any evidence that contradicts his determination.

> **C. The ALJ's Reliance Upon the Testimony of the Vocational Expert**

At step five in the disability determination process, if the claimant is found unable to do any work she has done in the past because of severe impairment, the ALJ must consider her RFC, age, education, and work experience to see if she can do other types of work. 20 C.F.R. § 404.1520(f)(1). If there are non-exertional limitations in question, the ALJ may rely on the expertise of a vocational expert ("VE") to assist in ascertaining a claimant's RFC.[2] 20 C.F.R. §§ 404.1566(e), 416.966(e). In doing so, the ALJ may pose a hypothetical question to the VE, communicating the claimant's age, education, work experience and RFC. If the hypothetical put to the VE is flawed or contains omissions, it undermines "the foundation for the expert's ultimate conclusion that there are alternative jobs appellant can do." Simms v. Sullivan, 877 F.2d 1047, 1051 (D.C. Cir. 1989).

---

[2] "The Secretary must introduce expert vocational testimony to prove that a significant number of jobs are available for the claimant." Smith v. Bowen, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

Plaintiff argues that the ALJ's question to the VE was fatally defective because the ALJ "ignored or otherwise overlooked the restrictions set forth by Dr. Lumpkins, the Plaintiff's treating physician, without explanation." Pl.'s Mot. at 17. Plaintiff further argues that the ALJ "failed to properly address the Plaintiff's limitations on concentration, persistence, or pace in his hypothetical question to the vocational expert." Id. at 17-18. Defendant responds that the ALJ's step five findings are supported by substantial evidence, and that to the extent that there are any errors with the hypothetical posed to the VE, none of those errors warrant remand. Def.'s Mot. at 18-20.

An ALJ who looks to the opinion of a VE at stage five of the disability determination process "must accurately describe the claimant's physical impairment in any question posed to the expert." Butler, 353 F.3d at 1006. The ALJ's hypothetical question to the VE must "present a faithful summary of the treating physician's diagnosis unless the ALJ provides good reason to disregard the physician's conclusions." Lockard v. Apfel, 175 F. Supp. 2d 28, 33 (D.D.C. 2001).

Plaintiff is correct that the ALJ's hypothetical did not fully and accurately describe Plaintiff's impairments. In fact, Defendant concedes that the ALJ failed to include in his hypothetical question a number of the vocationally-relevant

restrictions set forth in Dr. Lumpkins' January 18, 2008 opinion.[3] See Def.'s Mot. at 18. Despite this concession, Defendant contends that Plaintiff has demonstrated no basis for remand because, even accepting all of the limitations set forth by Dr. Lumpkins, Plaintiff would still be capable of performing the jobs identified by the VE. Defendant's argument has no merit because the ALJ "*must* accurately describe" the claimant's impairments unless he provides good reason for disregarding the physician's conclusions. Butler, 353 F.3d at 1006 (emphasis added). The ALJ did not accurately describe Plaintiff's impairments, nor did he explain why he disregarded Dr. Lumpkins' opinion.

Furthermore, the ALJ found in his RFC that Plaintiff has "moderate" limitations in concentration, persistence or pace, but his hypothetical question to the VE stated that Plaintiff had only "mild" limitations in concentration persistence or pace. See AR at 23, 24, 55.

These deficiencies in the ALJ's hypothetical undermine the foundation for the VE's conclusion. Accordingly, upon remand, if the ALJ elects to call a VE, the hypothetical posed must

---

[3] As discussed, supra, Dr. Lumpkins concluded that Plaintiff could not bend, twist or kneel and could only occasionally move her neck, reach at shoulder level, stand, walk, and perform repetitive movements. AR at 211.

describe the Plaintiff's impairments accurately in light of objective medical testimony.

**IV. CONCLUSION**

Upon consideration of the parties' cross-motions, the administrative record, and the entire record herein, and for the reasons set forth in this Memorandum Opinion, Plaintiff's Motion for Judgment of Reversal is hereby **granted in part and denied in part**, and Defendant's Motion for Judgment of Affirmance is hereby **denied.**

This case is hereby **remanded** to the Commissioner for rulings in steps four and five of the disability determination process. In consideration of these steps, the entire medical record, including Dr. Lumpkins' January 18, 2008 opinion, must be given due regard.

August ___, 2012                    /s/_____
                                    Gladys Kessler
                                    United States District Judge

Copies to: attorneys on record via ECF